Whenever you're ready, Ms. Kirkpatrick, you may start. May it please the Court. My name is Lisa Kirkpatrick, and I represent the government in this appeal. This case is a case about statutory interpretation. That's all. This is not a chemistry case. The defendant offers an interpretation of the Minnesota's drug laws, specifically its cocaine law, that runs counter to legislative intent and depends on the notion that the term isomers is unambiguous and that it unambiguously covers any and all of cocaine's isomers. In contrast, the government argues that the term is ambiguous and that legislative intent can only be carried out by interpreting the term isomers to mean its stereoisomers, coextensive with federal law. I'd like to do two things today. I, of course, want to answer this Court's questions about the ambiguity of the statute and explore that a little bit. But I'd like to start by approaching the subject from a bit of a different angle than appears in the briefing. I would like to assume for the sake of argument that the defendant is correct, that at least in the field of organic chemistry, the term isomers has a set, well-defined meaning in that context. That doesn't answer the question of whether the term is unambiguous in the drug laws. It is ambiguous. And I'd point the Court to Section 645.17 of the Minnesota Statutes. That statute directs courts that when ascertaining legislative intent, they should not construe a statute in a way where they should presume that the legislature did not intend absurd results or results that would be impossible to effectuate. In accepting the defendant's interpretation that with respect to drug laws, Minnesota law covers any and all isomers would be both absurd and impossible to effectuate. Well, let me ask you this. I mean, here's a problem I'm having. Having been a former State court judge, if somebody walked into the State Supreme Court and had been convicted of a functional isomer, I don't even know what a functional isomer of cocaine looks like, but there was expert testimony on it, I would have a hard time saying that's not covered by the plain language of the word isomers of cocaine. I mean, help me out with this, because it is an isomer of cocaine. It just happens to be a different type of isomer of cocaine. Right. I want to help you out with that, Your Honor, and here's why. First of all, the absurd result of concluding that a functional isomer of cocaine is cocaine within the meaning of Minnesota law would mean Professor Denmark, he's the chemist whose affidavit the government submitted at District Court Docket No. 75-3. He explained that while there are only eight stereo isomers of cocaine, the number of constitutional isomers of cocaine is nearly infinite. So it would be absurd to conclude that Minnesota legislature intended to cover a nearly infinite number of substances when it said isomers of cocaine. And not only that, Professor Denmark explained that at least as to one kind of constitutional isomer, positional isomers, it's unlikely that they have any psychoactive effect. So concluding that isomer includes all isomers, including functional isomers, would be to conclude that the legislature controls an infinite thousands upon thousands upon thousands number of. What about the expert testimony, though? So there's more expert testimony that I don't know what these things are, but one of them said that there's reverse ester cocaine and norco-alethylene, and I assume those have psychogenic effects. I don't know if they do or not, but maybe. I mean, it seems to me like we have a dispute about whether some of these other isomers you think are excluded would actually have a drug-like effect. I don't know that there's dispute because of the constitutional isomers, they are synthetic. They can only be produced in a laboratory. And they're so difficult to produce, they've only been produced on a couple of occasions in the scientific evidence. As to the stereo isomers and its constitutional isomers, I think what's important here is to look at the context and the statutory history of Minnesota's drug laws and the federal drug laws. The Uniform Controlled Substances Act was adopted by Minnesota and other states precisely to be uniform with federal law and to create that interlocking trellis of drug laws between the state and the federal government. We know that because the Minnesota Supreme Court has said that the manifest purpose of the legislation was to maintain uniformity between the laws of Minnesota and the laws of the federal government. And we know why the federal government added isomers to its definitions of controlled substances. We know that was in response to the isomer defense. And we know, in case law bears this out, that the isomer defense implicated just those eight stereo isomers of cocaine. Cocaine and its seven synthetic stereo isomers. That's what Congress was reacting to. That's what Minnesota was reacting to when, in 1987, they amended their statutes. But Minnesota clearly knew how to draft this, because in other sections of the Minnesota Code, it does use the federal language, right? I'm looking at 152.02 subdivision 5B3, optical and geometric isomers. That's the language you want us to import into this case, right? And I just have a hard time finding it ambiguous if it's clear the Minnesota legislature knew how to write this, and they didn't use those limiting words in this section. How do I get around that to ambiguity? We get around that because government explained in its opening brief, there's a reason why Minnesota used those terms. They used optical with respect to amphetamine, because that was always there since 1971. They used optical and geometric and positional with respect to hallucinogens because they were copying, replicating federal law and the schedules at that time. And you'll notice that the schedules in the CFR, Your Honor, I don't mean to interrupt you. Go ahead. The schedules in the CFR, which are the most current schedules, and that's what Minnesota's replicating. Minnesota's not replicating the statute, the U.S. Code. It's replicating what the U.S. Code points to as the most current up-to-date schedules, and those are in the Code of Federal Regulations. And the types of isomers are not listed there with respect to cocaine. You have to go to a separate part of the CFR to find the definition of isomer, and that's different with respect to those substances to which you're referring, Your Honor, but with respect to hallucinogens and with respect to amphetamine, that right there in the schedule are those confining to those particular types of isomers. You know, there's a delay of three years in the enactment of the amendment, and there's plenty of time to figure out where things are. I mean, I don't know. I mean, first of all, the fact that we're wallowing about in the legislative history when there doesn't seem to be any statutory ambiguity is a little troubling to me, you know, because it just doesn't seem appropriate. I mean, because what you're really asking us to do is to go to the legislative history to create an ambiguous statute, aren't you? No, Your Honor. It's the government's argument that the term isomers draws its meaning precisely from its context so that you can interpret what the meaning is without looking not only at the fact that we're talking about drug laws but the specific substance we're talking about. And here the substance we're talking about is cocaine, and those isomers are just the isomers that gave rise to the isomer defense. But isn't that contrary to a lot of textualist opinions written all over the country that just say we look at the statute? It's too bad when the Congress or the legislature writes something that it does not say what they intended to say. They wrote what they wrote. That's the law we follow because that's what people have notice of. Why is that wrong? It's wrong, Your Honor, because 645.16 of the Minnesota statutes says that you apply the plain meaning when the words of the statutes are free and clear of all ambiguity. That's pretty strong language. Yeah, but the statute is free and clear from all ambiguity until you start reading the legislative history into it, right? I don't believe it is, Your Honor. I think the mere fact we're here arguing about the meaning is one data point to establish it's not. Well, the one data point is the government wants to read the legislative history in it to criminalize conduct or to separate criminal conduct from non-criminal conduct to preserve the conviction for ACCA purposes. Well, it's not simply the government here. The Seventh Circuit has said that ascertaining an ordinary meaning to the term isomers would be a fool's errand. There is no ordinary meaning as used in drug laws. Let's presume you're right. Why don't we go to the rule of lenity, right? It gets back to the notice issue, which is the average guy or gal reading this is not going to know what the term isomer means. And so why not use the rule of lenity and say these are not ACCA crimes? The rule of lenity is applied only as a last resort when courts are unable to otherwise ascertain legislative intent. And this case, when looking at legislative intent, is actually really easy. It's easy because of Minnesota law. It's easy because of statutory history. It's easy because of what the Minnesota Supreme Court said. And I see I've run out of all my time, but I would also like to quickly— Let me just ask one more question, if I could. You may. You know, I get it with other canons, but we don't expect criminal defendants to go read the legislative history. And actually, my experience with legislative history in Minnesota is less than stellar because none of it's written down. It's all on audio tape. So whenever you've got to do legislative history, you've got to go do it. Do we expect criminal defendants to go listen to the audio tape in order to figure out what's criminally prohibited? The rule of lenity here actually supports the government's interpretation. The rule of lenity would support that only eight stereoisomers are controlled, not an infinite number. And I'd also like to point the Court to 645.16, lists eight factors courts should consider in ascertaining legislative intent. All of those factors point to construing Minnesota law to be coextensive with federal law. And 645.22 directs courts when ascertaining legislative intent and looking at laws that were enacted in order to be uniform. And, Judge Erickson, this is in response earlier to your question, why are we looking at the legislative history? It's because 645.22 tells us to. It says when a law was enacted to be uniform with the laws of other states, it should be interpreted in a way that achieves that uniformity. The defendant's argument undercuts rather than carries out legislative intent. And that's why we're asking the Court to find that Minnesota laws, its definition of cocaine is coextensive with federal law. And that is sentence be reversed. Thank you. Thank you. You may. May it please the Court, my name is Robert Richmond. I represent Maurice Owen. Isomers are defined as molecules that share the same chemical formula but have their atoms connected differently or arranged differently in space. I'm quoting from the government's brief on page 11, which in turn is quoting from United States v. Pfeiffer, an 11th Circuit case. The government's own experts agree as to the definition of isomer. There is no dispute about what an isomer is. There is no dispute that this definition of isomer includes stereoisomers, such as optical or geometric isomers, and constitutional or structural isomers, such as positional or functional isomers. Yet the government's entire argument depends on persuading this Court that it should throw out the plain meaning of the term isomer and conclude that Minnesota used the term isomer to mean optical and geometric isomers, but not structural isomers, such as positional or functional isomers. Some of the things that are excluded, do they have properties that, you know, are hallucinogenic or whatever? The reason why I ask that is because I wonder how realistic a prosecution is on something that doesn't have drug-like properties. In other words, is that another way to get at the government's argument? Well, Your Honor, first of all, the record is unclear as to the psychotropic properties of these other types of isomers, which is one reason that Minnesota may have chosen to criminalize all isomers of cocaine. And while the government's experts suggest that there are many permutations of structural isomers in theory, in practice the experts have only been able to identify, in this case, have identified three structural isomers that are not within the Federal definition. You know, can I ask just a question here? Because I think that, for me, one of the lynch points in this case is the experts' testimony that they're only testing for isomers that fall within the Federal definition. And we have a case that, this is unfair, I wrote it and it was published last month, Hutchinson, which basically says you don't have to find ambiguity in the statute if there's no realistic possibility that you could be convicted. And given the testimony, if we apply the Hutchinson case, then I think that there's a strong argument here that there is no realistic possibility or probability that anyone would be convicted for any of these isomers that we're dancing about. And in some ways, all of these sort of artificially created in a lab kind of chemicals are just that. They were dancing on the head of a pin there, and that's not the, they're just not realistically going to happen. In Hutchinson, Your Honor, as I recall, the question was whether the burglary statute of some state required, thank you, required an intent to commit a crime. And there were possible, and this Court found that, in fact, the Texas statute was not overbroad. It was a match with the generic definition of burglary. So, first of all, all of the discussion of realistic probability was dicta, since it was not necessary to the Court's conclusion, having found that the statute was not overbroad. But in addition, while the Court did make reference to this idea of realistic probability, as I understood what the Court was doing in Hutchinson, given that it had found that there was a match with the Texas burglary statute, it was addressing the cases that the defendant, the appellant, had raised, trying to argue that the statute was overbroad. So while there was some realistic probability language in Hutchinson, I don't really see it as a realistic probability case. Is your argument, though, really that we don't know enough? I mean, that's what I'm reading you as, is we're sitting up here, speaking for myself, I don't know anything about these chemicals. And it sounds to me like there wasn't a lot of, there wasn't much of a record established below as to what these other substances do. So I sort of return to my original question, which is, you know, I could see there being a very realistic probability. There's a lot of synthetic substances now that we didn't know had drug properties that are now illegal under the Federal schedules, synthetic materials. And so I just wonder whether we know enough to know whether that's true here or not. Your Honor, I think there is clearly a realistic probability. Well, first of all, the cases that I rely on are Gonzalez v. Wilkerson and United States v. Brown, where the Court very clearly said that where overbreath is apparent on the face of the statute, that overbreath itself is sufficient to establish realistic probability and you don't have to look at prosecutorial practice. In this case, all isomers of cocaine have been criminalized. The questions about whether those substances have psychoactive effects or not gets into whether that was a good idea or a bad idea. I would respectfully suggest that is not the province of this Court. And many other states, the government says that would result in an absurd result, but it's the same absurd result that has been adopted by New York, by North Carolina, by Texas, by Indiana. Those states made a decision that they do not want to impose on crime labs, which are busy enough, to have to differentiate between this isomer and that isomer and allow defendants to make the argument, well, this was not a positional isomer. It was actually a functional isomer. So we can avoid that problem by simply criminalizing all isomers of cocaine. There is nothing absurd about that, and many states have done it. And the government in this case concedes that if the statute is facially overbroad, then the offense cannot serve as an ACCA predicate. And that was an appropriate concession because it is the holding of Gonzales, and it is the case here. This is not a case which depends on theoretical possibilities or fanciful hypotheticals. I would suggest that we would be dancing on the head of a pin if there was no record as to whether structural isomers of cocaine exist. If we were talking about, as in the Ninth Circuit case, Gamboa, you know, are there dragons out there that can be prosecuted? But in this case, the experts on both sides agree that there are structural isomers of cocaine. They exist. They fall within the drug statute. Therefore, there is a realistic probability that they will be prosecuted. I don't — in my position, it's our position that Gonzales and Brown are controlling here as to realistic probability. In this case, even if the Minnesota legislature had intended to conform its definition with the Federal definition, it didn't do so. The idea that we can't look — the idea that the government is asking this Court to look to legislative intent to make a clear statute ambiguous is — violates every rule of statutory construction. When the Minnesota legislature wanted to limit the isomers that were subject to prosecution, it did so, as Judge Kobus noted during the government's argument. It did it expressly with respect to hallucinogens, with respect to amphetamines. And this idea that they were simply copying what the feds did and so, therefore, had no intent at all, I think, frankly, is somewhat insulting to the legislature and what a legislature does in enacting laws. This Court has noted that there are at least 200 differences between the Federal drug laws and the Minnesota drug laws. So this idea that Minnesota is just hell-bent on being in lockstep with the Federal definitions is simply not correct. For all those reasons, Your Honor, I would ask the Court to affirm the judgment of the District Court. Thank you. Thank you. Ms. Kirkpatrick, I think you have 16 — you have how much time? None? We'll give you a minute. She used almost two minutes of her three minutes rebuttal. No, she used it all. She used it all? Yes. So we'll give you a minute to — for rebuttal. Thank you. Judge Erickson, you mentioned what the state of the record is concerning the testing, and you indicated that the Bureau of Criminal Apprehension laboratories are only testing for stereoisomers of cocaine. It's more than that. I want to emphasize that the testing that's done generates spectrum of an unknown substance and compares it to the spectrum of known substances. And those known substances, they will only match. It's not just that they're only looking for stereoisomers of cocaine. It's that the results would only turn up positive if they were stereoisomers of cocaine or naturally occurring cocaine. So this actually is a case like the defendant stated in his brief where he tried to analogize a structural isomer to the word café and face. Those words have the same letters, much like structural isomers have the same constituent parts or atoms, but they're different words. Face and café are different. Stereoisomers of cocaine and its constitutional isomers of cocaine are different. Thank you. Your Honor. Thank you for your arguments.